UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SORDEN DAVIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> LANDS' END, INC. and LANDS' END BUSINESS OUTFITTERS, INC., <br><br> Defendants. | Case No.: 20-cv- <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## **CLASS ACTION COMPLAINT**

Plaintiff, Sorden Davis ("Plaintiff"), individually and on behalf of a class of similarly situated persons, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, the investigation undertaken by Plaintiff's undersigned counsel, which included review and analysis publicly available information. Plaintiff believes that additional evidentiary support will exist for the allegations contained herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1. This is a class action on behalf of employees of Delta Air Lines ("Delta") against Lands' End, Inc., a company that manufactures uniforms worn by Delta employees. Plaintiff, and other members of the class that Plaintiff seeks to represent (the "Class") are all Delta employees or former employees, who wore uniforms manufactured by Lands' End, and as a result suffered unexpected adverse health effects, including skin rashes, skin irritation, and hair loss.

## JURISDICTION AND VENUE

2.     Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from some Defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).  Also, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because Plaintiff's Magnuson-Moss Act claim arises under federal law.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.     While the exact number of Class members is unknown at this time, Plaintiff has reason to believe that hundreds, if not thousands, of Delta employees wore uniforms manufactured by Lands' End and suffered adverse health reactions as a result.  The actual number of Class members could be discerned from the records maintained by Defendants and by third-party Delta.

4.     While the exact damages to Plaintiff and the members of the Class are unknown at this time, Plaintiff reasonably believes that their claims exceed five million dollars ($5,000,000) in the aggregate.

5.     This Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Lands' End is headquartered in the State of Wisconsin and has purposefully availed itself of the privilege of conducting business in the State of Wisconsin.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  The acts and conduct complained of herein occurred in substantial part in this District.  Furthermore, Lands' End does

substantial business in this District, including maintaining its principal place of business in this District; and is subject to personal jurisdiction in this District.

## THE PARTIES

7. Plaintiff is a Georgia resident who wore apparel manufactured by Lands' End for use in his employment as a Delta gate agent, and suffered adverse health consequences as a result, including skin irritation, skin rash and permanent hair loss.

8. Defendant Lands' End, Inc. is a Delaware corporation with its principal place of business at 1 Lands' End Way, Dodgeville, Wisconsin 53595.

9. Defendant Lands' End Business Outfitters, Inc. is a Delaware corporation with its principal place of business located at 1 Lands' End Way, Dodgeville, Wisconsin 53595. Land's End, Inc. and Land's End Outfitters, Inc. will be collectively referred to as "Lands' End."

## SUBSTANTIVE ALLEGATIONS

**A.    Plaintiff Wears a Uniform Manufactured by Lands' End and Suffers Harm**

10. Plaintiff has been employed by Delta as a gate agent since June 8, 2009.

11. Beginning on or around March 8, 2019 Plaintiff was issued a Delta uniform manufactured by Lands' End. The uniform included three-piece suit (blazer, pants, vest), dress shirts, sweater, tie, pocket squares, and a trench coat. With an additional uniform points allowance available, Plaintiff purchased a second down overcoat and additional dress shirts.

12. Almost immediately after he began wearing the Lands' End uniform, Plaintiff began to experience significant adverse health effects, including skin irritation, skin rash, and hair loss. In particular, Plaintiff developed a red skin rash on his arms, legs, back and torso, and began to notice unusual hair loss when in the shower and when combing his hair.

13. Plaintiff sought medical treatment beginning around January 7, 2020. After undergoing several tests, it was determined that Plaintiff's skin rash and hair loss were a reaction to the Delta uniform he had been wearing.

14. Plaintiff expressed his concerns to his supervisor at Delta and was told to contact Defendants – the manufacturer of the uniforms

15. Plaintiff stopped wearing the Delta uniform around December 24, 2019. Since then, Plaintiff has had no adverse skin irritation or rash. However, the hair that Plaintiff lost has not re-grown.

### B. Other Delta Employees Experience Similar Adverse Health Consequences After Exposure to the Lands' End Uniforms

16. According to Delta's website, in October of 2016 Delta selected Lands' End to manufacture Delta's new employee uniforms. In announcing the selection, Delta explained that "Lands' End is best known for its high-quality, durable and versatile clothing, in addition to their Guaranteed. Period. brand promise." Delta also explained that the new uniforms would be "worn by more than 60,000 of the airline's frontline employees including customer service agents, flight attendants, ramp agents, and technicians."

17. Delta employees began wearing the new uniforms as "testers" in or around December of 2016, and Delta began a full roll out of the new uniforms on or around May 29, 2018. Prior to this date, according to its website, "Delta has updated its uniform collection for above wing employees including flight attendants and airport customer service agents in 2006" and "last updated its uniform collection for below wing employees, including technical operations employees and ramp agents, in 2000."

18. Just two weeks after the new uniforms were issued, a trade website called "One Mile at a Time," published an article titled "Oh Boy, Delta's New Uniforms are Causing

4

Problems Already." The article reported employee complaints about the new uniforms that included one garment causing "chafing around the neck." https://onemileatatime.com/delta-uniform-problems/.

19. On June 26, 2019, the National Institute for Occupational Safety and Health ("NIOSH"), an arm of the centers for Disease Control and Prevention ("CDC"), released a formal health hazard evaluation after being contacted by several Delta employees. The NIOSH obtained access to internal Delta injury and illness claims, and reported that "about 11 months after the official uniform roll out, 223 uniform-related health reports among inflight service personnel had been made to Delta" and that by mid-May 2019 "the total number of uniform-related health reports reported among inflight service personnel was 277." *See* NIOSH Report at 3. The report noted that "skin problems have been the most commonly reported health effects" and that some employees were reluctant to report any health issues to Delta "due to the possibility of being removed from their assigned flights while acquiring approval to wear alternative uniforms or while uniforms were modified." *Id.*

20. As part of its report, the NIOSH also reviewed "sampling data from a laboratory contracted by [Lands' End]" and noted initially that the "rationale for deciding which tests to include was not made clear" and that Lands' End "does not require materials or suppliers to be certified by any particular organization or standard." *Id.* at 5. The report also found that "[i]n some cases, the types of testing done were not consistent between fabrics." *Id.*

21. The NIOSH also reviewed relevant scientific literature and explained that "[h]istorically, exposure to formaldehyde from textile resins has been associated with skin problems" but the United States "has not developed requirements for chemical or metal contents of adult apparel." *Id.* at 5-6.

22.    The NIOSH concluded that "[i]t is possible that textile chemicals in the uniforms or the physical irritant properties of the uniform fabrics have caused skin symptoms among Delta employees." *Id.* at 7.

23.    As reported by Bloomberg Law on November 21, 2019, the NIOSH report led to increased calls for unionization among Delta employees. https://news.bloomberglaw.com/daily-labor-report/lab-clearing-deltas-toxic-uniforms-raises-union-rallying-cry.    Bloomberg Law reported that 943 Delta employees had formally complained that the new uniforms "caused rashes and difficulty breathing," and that one flight attendant claimed that she "experienced multiple severe reactions after the new uniforms were introduced" and was "rushed to the emergency room after her throat began to close and she experienced severe rashes and shortness of breath."  This employee was diagnosed with "occupational asthma" and placed on disability because she experienced these debilitating symptoms even "when working near other employees wearing the Lands' End uniforms."

24.    On January 30, 2020, the Associated Press reported that in response to the myriad of health-related complaints, Delta will again be issuing new uniforms, but not until late 2021. According to Delta, the new uniforms, unlike the current uniforms "will carry the OEKO-TEX STANDARD 100 label, the highest standard in the textile industry for chemical testing." https://apnews.com/ff4a23f8e28cd488567b8a90d7b1b104.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure (the "Rules") on behalf of a class consisting of all persons, exclusive of Defendants and its employees, who wore a uniform manufactured by Lands' End in connection with any employment at Delta, and suffered adverse health

6

consequences as a result, during the period from December 1, 2016 through the present day (the "Class").

26. ***Numerosity – Rule 23(a)(1).*** The members of the Class are so numerous that their individual joinder is impracticable. While the exact number of Class members is unknown at this time, Plaintiff has reason to believe that hundreds, if not thousands, of Delta employees wore uniforms manufactured by Lands' End and suffered adverse health reactions as a result. The actual number of Class members could be discerned from the records maintained by Defendants and by third-party Delta.

27. ***Common Questions of Law and Fact – Rule 23(a)(2).*** Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are the following:

   a. Whether the uniforms manufactured by Lands' End were defective and caused harm to Plaintiff and other Class members;
   b. Whether Defendants failed to warn Plaintiff and other Class members of the potential harmful effects of the uniforms it manufactured for Delta;
   c. Whether Defendants violated the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;
   d. Whether and to what extent Plaintiff and members of the Class have been damaged by Defendants' conduct and the proper measure of damages; and
   e. Whether Plaintiff and the Class are entitled to injunctive relief, restitution or other equitable relief and/or other relief as may be proper.

28. ***Typicality – Rule 23(a)(3).*** Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class have been subject to and affected by the same

conduct and actions by Defendants. The claims alleged herein are based on the same violations by Defendants that harmed Plaintiff and members of the Class. By wearing uniforms manufactured by Lands' End, all members of the Class were subjected to the same wrongful conduct. Plaintiff's claims are typical of the Class' claims and do not conflict with the interests of any other Class members. Defendants' unlawful, unfair, deceptive, and/or fraudulent actions concern the same conduct described herein irrespective of where they occurred or were experienced.

29. ***Adequacy – Rule 23(a)(4).*** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

30. ***Injunctive and Declaratory Relief – Rule 23(b)(2).*** Defendants' actions regarding their manufacture of uniforms are the same as to all members of the Class. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief as requested herein is appropriate for the Class as a whole.

31. ***Predominance and Superiority of Class Actions – Rule 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons: (a) absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional individuals will be harmed, and Defendants will continue to produce uniforms that cause harmful physical side effects; (b) it would be a substantial hardship for most individual members of the Class if they were forced to prosecute

individual actions; (c) when the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class; (d) a class action will permit an orderly and expeditious administration of the claims of each member of the Class and foster economies of time, effort, and expense; (e) a class action regarding the issues in this case does not create any problems of manageability; and (f) Defendants have acted on grounds generally applicable to all members of the Class, making class-wide monetary relief appropriate.

32. Plaintiff does not contemplate class notice if the Class is certified under Rule 23(b)(2), which does not require notice. However, notice to the putative Class may be accomplished through publication, signs or placards at Delta, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines that notice is required. Plaintiff will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## FIRST CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

33. Plaintiff incorporates the above paragraphs by reference as if set forth fully herein.

34. Defendants are, and were at all relevant times, a merchant with regard to the uniforms it manufactured and provided to Delta employees.

35. A warranty that the uniforms manufactured by Defendants were in merchantable condition is implied by law.

36. The uniforms produced by Defendants and provided to Delta were not merchantable or reasonably fit for their intended use because they are inherently defective or dangerous in that the uniforms cause adverse health effects, including skin irritation, skin rash and hair loss.

37. Plaintiff and Class members, at all relevant times, were intended third-party beneficiaries who used Defendants' uniforms, and such use was expected and foreseeable by Defendants.

38. Defendants had notice and knowledge of these issues by virtue of complaints received by Delta employees.

39. As a direct and proximate result of Defendants' breach of the warranty merchantability, Plaintiff and other Class members have been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty

40. Plaintiff incorporates the above paragraphs by reference as if set forth fully herein.

41. Defendants assured Delta and its employees that Defendants' uniforms would be safe and comfortable to wear.

42. At all relevant times, however, Defendants were aware of the adverse health effects that its uniforms caused, including skin rash, skin irritation, and hair loss.

43. Plaintiff and members of the Class were either in privity with Defendants and/or its agents, or else were the intended third-party beneficiaries of the warranties breached by Defendants to the extent required by law.

44. Plaintiff and other Class members suffered harm when they wore uniforms that did not conform to Defendants' express warranties.

45. Had Defendants disclosed the known health risks of wearing the uniforms it manufactured for Delta, Plaintiff and members of the Class would not have worn the uniforms, or else would have been on guard for potential adverse reactions caused by the uniforms.

46. As a direct and proximate result of Defendants' breach, Plaintiff and other Class members have suffered harm and injury in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Negligence

47. Plaintiff incorporates the above paragraphs by reference as if set forth fully herein.

48. Defendants owed a duty of care to Plaintiff and other Class members, who were the foreseeable end-users of the uniforms Defendants manufactured for Delta, not to place defective or unreasonably dangerous products into the stream of commerce.

49. Defendants breached their duty of care by, among other things, failing to take all steps reasonably necessary to ensure that the uniforms it produced were safe to wear, functioned as promised, and did not suffer from the defects that could cause the health problems discussed herein.

50. Defendants' negligence was the direct, actual, and proximate cause of foreseeable damages suffered by Plaintiff and other similarly-situated Class members.

51. As a direct and proximate result of Defendants' negligence, Plaintiff and other Class members have suffered significant damages and injury in an amount to be determined at trial.

52. Defendants' negligence is ongoing and continuing because Defendants continue to manufacture uniforms for use by Delta employees that are defective and unreasonably dangerous, and pose an unreasonable risk of serious future harm.

### FOURTH CAUSE OF ACTION
### Violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

53. Plaintiff incorporates the above paragraphs by reference as if set forth fully herein.

54. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3) and is entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

55. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

56. The uniforms Defendants produced for Delta are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

57. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

58. Defendants made promises and representations by assuring Delta and its employees that Defendants' uniforms would be safe and comfortable to wear. These promises and representations constitute a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

59. Further, Defendants provided Plaintiff and other Class members with an implied warranty of merchantability in connection with their use of Defendants' uniforms that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

60. As part of the implied warranty of merchantability, Defendants warranted to Plaintiff and other Class members, as third party beneficiaries who wore the uniforms Defendants produced for Delta employees, that the uniforms were of merchantable quality (*i.e.* a product of high enough quality to make it fit for sale, usable for the purpose for which it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed,

or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

61. Defendants made these misrepresentations and omissions in written advertising materials presented to Plaintiff and other Class members at the time of purchase in printed advertisement and on Defendants' website.

62. Defendants breached all applicable warranties, as described herein, and are therefore liable to Plaintiff and other Class members pursuant to 15 U.S.C. § 2301(d)(1). Defendants' uniforms suffer from latent and/or inherent defects that cause significant adverse health effects, including skin irritation, skin rash, and hair loss, rendering these uniforms unfit for their intended use and purpose. This defect substantially impairs the use and safety of the uniforms.

63. Any effort to limit the implied warranties in a manner that would exclude the applicability of the Magnuson-Moss Warranty Act would be unconscionable, and any such effort to disclaim or otherwise limit liability for the defective uniforms would be null and void and procedurally and substantively unconscionable. Plaintiff and other Class members had no bargaining power over Defendants, and Defendants knew that the uniforms it produced for Delta were defective and would continue to pose health and safety risks. Defendants failed to disclose any product defect to Plaintiff and other Class members and any limitation on Defendants' warranties would be harsh and would shock the conscious.

64. Plaintiff and other Class members have sufficient direct dealings with Defendants, or else are the intended third-party beneficiaries of any contracts between Defendants and Delta for use of the uniforms manufactured by Defendants.

65. All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed either by Plaintiff and other Class members or on their behalf by Delta.

66. Pursuant to 15 U.S.C. § 2310(e), Plaintiff and other Class members are entitled to bring this claim and are not required to give Defendants any notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Class pursuant to Rule 23 of the federal Rules of Civil Procedure. Furthermore, any opportunity to cure would be unnecessary and futile because Defendants are already on notice of the significant health issues regarding the uniforms it manufactures for Delta, and has had ample opportunity to cure any defects but has refused to do so. Under these circumstances, the remedies available under any applicable informal settlement procedure would be inadequate, and any requirement that Plaintiff and the Class resort to such a procedure is excused and deemed satisfied.

67. Defendants' breaches of warranty have caused Plaintiff and other Class members to suffer harm. As a direct and proximate result of Defendants' breaches, Plaintiff and other Class members suffered adverse health effects, including skin irritation, skin rash, and hair loss, and have incurred related economic loss as well.

68. The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff and other Class members seek all damages permitted by law and equity in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses

(including attorneys' fees) determined by the Court to have been reasonably incurred by Plaintiff and other Class members in connection with the commencement and prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a. Declaring this action to be a proper class action and certifying Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

b. Declaring that Defendants violated the Magnuson-Moss Warranty Act and/or otherwise breached their duties to Plaintiff and other Class members by producing defective uniforms that caused physical harm;

c. Awarding damages to Plaintiff and other members of the Class, and against Defendants, in an amount to be proven at trial, and including exemplary and punitive damages in order to prevent and deter Defendants from any future unlawful conduct;

d. Providing restitution to Plaintiff and the Class for any wrongful act or practice under each cause of action where such relief is permitted;

e. Enjoining Defendants from continuing the unlawful practices as set forth herein, including requiring Defendants to disclose the potential health risks relating to its uniforms and directing Defendants to engage in corrective action, or providing other injunctive or equitable relief;

f. Awarding Plaintiff and other Class members reasonable attorneys' fees and expenses incurred in this action, including expert and witness fees and other costs and disbursements; and

g. Awarding Plaintiff and other members of the Class such further relief as the Court

may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  March 4, 2020

**ADEMI & O'REILLY, LLP**

By:   /s/ Jesse Fruchter
Guri Ademi (SBN 1021729)
Shpetim Ademi (SBN 1026973)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
gademi@ademilaw.com
sademi@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com


**ANDERSEN SLEATER SIANNI, LLC**
Ralph N. Sianni (*to be admitted pro hac vice*)
Eric M. Andersen (*to be admitted pro hac vice*)
2 Mill Road, Suite 202
Wilmington, DE  19806
(302) 595-9102
rsianni@andersensleater.com
eric@andersensleater.com